**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| TEMITAYO FAWEHINMI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 11-2085 (EGS) |
| v. | ) | |
| | ) | |
| LINCOLN HOLDINGS, LLC | ) | |
| d/b/a MONUMENTAL SPORTS AND | ) | |
| ENTERTAINMENT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

<u>**MEMORANDUM OPINION**</u>

Plaintiff Temitayo Fawehinmi brings this action against Lincoln Holdings, LLC d/b/a Monumental Sports and Entertainment ("MSE"), Centre Group Limited Partnership ("Centre Group"), and DC Arena LP ("DC Arena") (collectively, "Defendants"), alleging claims of breach of contract, breach of the covenant of good faith and fair dealing in a contract, negligent misrepresentation, and intentional misrepresentation. Pending before the Court is Defendants' Motion for Partial Summary Judgment on Count II (breach of the covenant of good faith and fair dealing in a contract), Count III (negligent misrepresentation), Count IV (intentional misrepresentation), and Plaintiff's claim for punitive damages. In addition, Defendants Centre Group and DC Arena move for summary judgment as to Count I (breach of contract), arguing that they were not

parties to the contract at issue.  Upon consideration of the motion, the oppositions and replies thereto, the relevant law, the entire record in this case, and for the reasons set forth below, the Court will **GRANT IN PART AND DENY IN PART** Defendants' Motion for Partial Summary Judgment.

## I.   BACKGROUND

Plaintiff alleges that on May 23, 2011, he entered into an exclusive licensing agreement (the "Agreement") with Defendants to rent the Patriot Center (the "Arena") for a fundraising concert to be held on July 30, 2011.  Compl. ¶ 13; *see also* Defs.' Statement of Material Facts Not In Dispute ("Defs.' SMF") ¶ 1.  The Agreement consisted of two documents titled "Basic Information Sheet" and "Standard Provisions."  Defs.' SMF ¶ 2; *see also* Defs.' Mot. for Summ. J. ("Defs.' MSJ"), Ex. A.  The Agreement permitted Plaintiff to use the premises from 7:30 p.m. through 11:00 p.m. on July 30, 2011 for an agreed fee of $40,000, plus the costs of stagehands and rigging and a $4-per-ticket parking fee.  *See* Compl. ¶¶ 15, 18; Defs.' SMF ¶ 7. Plaintiff was required to pay an advance deposit of $6,000 and then an additional deposit of $15,000, both of which he paid prior to the event date.  Compl. ¶ 16; Defs.' SMF ¶¶ 8, 10.

On July 26, 2011, Plaintiff met with the General Manager of the Arena, Barry Geisler, to pay the required $15,000 deposit. Plaintiff alleges that Geisler suggested that Plaintiff cancel

the event and used expletives when referring to Plaintiff. Compl. ¶ 17.  According to Plaintiff, on July 30, 2011, most of the performing artists scheduled to perform at the event appeared at 3:00 p.m. for the sound check.  At about 7:30 p.m., the doors to the Arena were opened and a disc jockey began entertaining the crowd.  Compl. ¶ 19.  However, at about 9:00 p.m., Geisler appeared on the stage, without obtaining authorization or consent from Plaintiff, and announced that the event was terminated and that the guests and event participants must leave the Arena.  Compl. ¶ 20; *see also* Defs.' SMF ¶ 21. Plainitff alleges that Geisler's announcement brought the event to a premature end.  Compl. ¶ 21; *see also* Defs.' SMF ¶ 21.

Plaintiff filed his Complaint in this action on November 21, 2011.  Plaintiff subsequently consented to the dismissal of named Defendants Barry Geisler, DC Arena Associates, Commonwealth of Virginia, and George Mason University.  The remaining Defendants, MSE, Centre Group, and DC Arena, filed an Answer and Counterclaim on January 23, 2012.  Defendants then filed a Motion for Partial Summary Judgment on February 13, 2012.  Plaintiff filed a request for discovery pursuant to Rule 56(d), and then subsequently, Plaintiff filed an Opposition to the Motion for Partial Summary Judgment.  The motion is ripe for determination by the Court.

## II.   STANDARD OF REVIEW

Summary judgment should be granted only if the moving party has shown that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of demonstrating the absence of genuine issues of material fact. *See Celotex*, 477 U.S. at 323. In determining whether a genuine issue of material facts exists, the Court must view all facts in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Keyes v. Dist. of Columbia*, 372 F.3d 434, 436 (D.C. Cir. 2004). The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials; rather, it must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c)(1); *Celotex*, 477 U.S. at 324. "The mere existence of a scintilla of evidence

4

in support of the [non-movant]'s position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

## III. ANALYSIS

### A.   Choice of Law

As an initial matter, neither party disputes that Virginia law applies to all of Plaintiff's claims.  In a diversity case, a federal court follows the choice-of-law rules of the jurisdiction in which it sits.  *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496-97 (1941).  District of Columbia courts give effect to contractual choice-of-law provisions "as long as there is some reasonable relationship with the state specified."  *Elemary v. Philipp Holzmann A.G.*, 533 F. Supp. 2d 144, 153-54 n.3 (D.D.C. 2008) (citation omitted).  Here, the Agreement explicitly provides: "The Agreement shall be construed and enforced under the laws of the State in which the Arena is located."  Defs.' MSJ, Ex. A, at ¶ 38.  The Patriot Center is located in Fairfax, Virginia.  Defs.' MSJ at 7; *see also* Compl. ¶¶ 4, 8.  There is a reasonable relationship between a contract for the use of an arena in Virginia and the application of Virginia law.

Even if the Agreement did not contain an explicit choice-of-law provision, under District of Columbia law, where the parties to a contract have not agreed on the applicable law, the

court uses a "constructive blending" of the "governmental interest" analysis and the "most significant relationship" test, to determine which state's laws apply. *Stephen A. Goldberg Co. v. Remsen Partners, Ltd.*, 170 F.3d 191, 194 (D.C. Cir. 1999) (citing *Hercules & Co., Ltc. v. Shama Rest. Corp.*, 566 A.2d 31, 41 n.18 (D.C. 1989)). Under that test, courts must "evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be more advanced by the application of its law to the facts of the case under review." *Dist. of Columbia v. Coleman*, 667 A.2d 811, 816 (D.C. 1995). In so doing, courts also consider certain relevant factors enumerated in the Restatement (Second) of Conflict of Laws. For contract claims, District of Columbia Courts consider the five factors listed in the Restatement (Second) of Conflict of Laws § 188: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the contract's subject matter; and (5) the domicile, residence, nationality, place of incorporation and place of business of the parties. *Stephen A. Goldberg Co.*, 170 F.3d at 194. For tort claims, District of Columbia courts consider the four factors set forth in the Restatement (Second) of Conflict of Laws § 145: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation and place of

6

business of the parties; and (4) the place where the
relationship is centered. *Coleman*, 667 A.2d at 816.

Here, the Court finds that the factors weigh in favor of
Virginia.  It is not explicit in the record whether the
negotiation and contracting occurred in Virginia.  Defendants
imply that both of these factors weigh in favor of Virginia, *see*
Defs.' MSJ at 7, and Plaintiff does not address the choice-of-
law issue, instead assuming that Virginia law applies to all of
his claims.  The domicile, residence, and place of business of
the remaining parties is split between Maryland, Virginia, and
the District of Columbia.  *See* Compl. ¶¶ 2, 4-6.  However, the
place of performance of the contract and the location of the
contract's subject matter were both the Patriot Center in
Virginia.  Moreover, the place where the injury and conduct
causing the injury occurred was also the Patriot Center in
Virginia.  Therefore, the Court finds it appropriate to apply
Virginia law to Plaintiff's contract and tort-based claims.

**B.   Contract Claims Against Centre Group and DC Arena**
     **(Counts I and II)**

Defendants argue that because it is clear from the face of
the Agreement that Centre Group and DC Arena are not parties to
the contract, there is no basis for either the breach of
contract claim or the breach of covenant of good faith and fair
dealing claim against them.  Defs.' MSJ at 8.  Plaintiff argues

for the first time in his Opposition that Centre Group and DC Arena are partners of MSE, and are thus liable for its actions. Pl.'s Opp'n at 5 (citing Virginia Uniform Partnership Act, Va. Code Ann. § 50-73.91).[1]  Plaintiff bases this assertion upon Plaintiff's own affidavit, which states that Barry Geisler told Plaintiff that the Defendants were partners.  *See* Pl.'s Opp'n, Ex. B, Affidavit of Temitayo Fawehinmi ("Fawehinmi Aff.") ¶ 7 ("Mr. Geisler also told me that there are two additional partners of [MSE], namely DC Arena LP and Centre Group Limited Partnership that are involved in my leasing of the Arena."). Plaintiff further alleges that Barry Geisler required Plaintiff to name Centre Group and DC Arena as additional insured parties as a condition precedent to leasing the Arena.  *See id.* ¶ 8. Plaintiff therefore argues that there is a genuine issue of material fact as to whether these two Defendants are liable as agents of the partnership.  *See* Pl.'s Opp'n at 5.

The Virginia Uniform Partnership Act ("VUPA") defines a "partnership" as "an association of two or more persons to carry on as co-owners a business for profit."  Va. Code Ann. § 50-73.79; *see also Walker, Mosby & Calvert, Inc. v. Burgess*, 151 S.E. 165, 167 (Va. 1930).  Under the VUPA, a partner is an agent of the partnership for purposes of its business.  Va. Code Ann.

---

[1] Plaintiff's Opposition contains no page numbers, so the Court refers to the page of the entire docket entry listed as Plaintiff's Opposition, *see* Docket No. 19.

§ 50-73.91(1).  The VUPA provides guidance for determining whether a partnership is formed, including, but not limited to, joint tenancy by the partners, sharing of profits, or gross returns.  *Id.* § 50-73.88(C).

Even viewing the facts in the light most favorable to Plaintiff, he does not plausibly suggest the existence of a partnership between the Defendants, nor does he allege that Centre Group and DC Arena had any rights or obligations under the Agreement.  As Defendants assert, "[a] person is not liable as a partner merely because the person is named by another in a statement of partnership authority."  Va. Code Ann. § 50-73.98(C); *see also Perry v. Scruggs*, 17 F. App'x 81, 90-91 (4th Cir. 2001); *Dulien v. St. Lewis*, 198 F.2d 301, 302 (D.C. Cir. 1952) (holding that reported statements of one party that another individual was his partner was inadmissible to show partnership as against the latter individual, at least in the absence of a *prima facie* showing of partnership established by other evidence).  Therefore, Plaintiff cannot rely solely on the statement made by Geisler as evidence of the alleged partnership.

Furthermore, Plaintiff offers nothing more than unsupported speculation that the fact that he was required to insure Centre Group and DC Arena renders them partners with MSE.  *See* Pl.'s Opp'n at 5 ("The rational question is why do they need to be

9

insured if they have nothing to do with the agreement?").
Plaintiff's conclusory allegations, without more, fail to create
a material issue of fact sufficient to defeat summary judgment.
*See Network Computing Servs. Corp. v. Cisco Sys.*, 152 F. App'x
317, 320 (4th Cir. 2005); *Exxon Corp. v. FTC*, 663 F.2d 120, 127
(D.C. Cir. 1980) ("[C]onclusory allegations unsupported by
factual data will not create a triable issue of fact." (citation
omitted)).  In addition, Plaintiff offers no legal authority for
the proposition that where a contract requires one to insure
additional entities, those entities become parties to the
contract, even where not specified in the contract.

It is undisputed that the Agreement is unambiguous.  *See*
Defs.' MSJ at 8-9; Pl.'s Opp'n at 5.  "When contract terms are
clear and unambiguous, a court must construe them according to
their plain meaning."  *Bridgestone/Firestone, Inc. v. Prince
William Square Assocs.*, 463 S.E.2d 661, 664 (Va. 1995).  The
Agreement lists only Plaintiff and MSE as parties, not Centre
Group or DC Arena.  *See* Defs.' MSJ, Ex. A, at 2, 5.  Plaintiff's
conclusory allegations, unsupported by any competent evidence or
legal authority, are insufficient to create a genuine issue of
material fact to defeat summary judgment.  Accordingly, the
Court will grant Defendants' motion as to the breach of contract
and breach of covenant of good faith and fair dealing claims
against Centre Group and DC Arena.

**C.    Breach of Covenant of Good Faith and Fair Dealing
       Claim against MSE (Count II)**

Defendants argue that Plaintiff's claim for breach of the

covenant of good faith and fair dealing is unsupported by

Virginia law.  Defs.' MSJ at 9-10.  According to Defendants,

here, where it is conceded that there is a valid and enforceable

Agreement and the alleged wrongdoing is the termination of that

Agreement, Plaintiff's claim is solely for breach of contract,

not for breach of the covenant of good faith and fair dealing.

Defendants further argue that because Plaintiff defaulted under

the contract, Defendants terminated the Agreement based upon its

terms.  *See id.*  By contrast, Plaintiff argues that Defendants'

agent terminated the event in violation of the contract, and

therefore that there is a genuine issue of material fact in

dispute barring summary judgment.  Pl.'s Opp'n at 6-7.[2]

Under Virginia law, contracts contain an implied covenant

of good faith and fair dealing.  *See Charles E. Brauer Co. v.*

*NationsBank of Va., N.A.*, 466 S.E.2d 382, 385 (Va. 1996); *Va.*

*Vermiculite, Ltd. v. W.R. Grace & Co.*, 156 F.3d 535, 542 (4th

---

[2] Plaintiff also argues that Defendants' attempt to
introduce evidence of the show schedule to vary the terms of the
Agreement is barred by the parole evidence rule.  *See* Pl.'s
Opp'n at 5-6.  Plaintiff provided the show's schedule to
Defendants' agents in advance of the concert.  However,
Defendants' reliance on the schedule, whether proper or not, is
not material to the resolution of the instant motion, and the
Court need not address it at this time.

Cir. 1998) (interpreting Virginia contract law); *SunTrust Mortg., Inc. v. United Guar. Residential Ins. Co.*, 806 F. Supp. 2d 872, 893-95 (E.D. Va. 2011).  However, no implied duty arises with respect to activity governed by express contractual terms. *Ward's Equip. v. New Holland N. Am.*, 493 S.E.2d 516, 520 (Va. 1997) ("[W]hen parties to a contract create valid and binding rights, an implied covenant of good faith and fair dealing is inapplicable to those rights."); *see also Brauer*, 466 S.E.2d at 386 (holding that a party cannot breach an implied covenant of good faith if it "did nothing more than exercise its rights provided in the [contract] and under the applicable law").  As explained by the Fourth Circuit, "although the duty of good faith [under Virginia law] does not prevent a party from exercising its explicit contractual *rights*, a party may not exercise contractual *discretion* in bad faith, even when such discretion is vested solely in that party." *Vermiculite*, 156 F.3d at 542.

Here, construing the facts in the light most favorable to Plaintiff, the Court concludes that there is a genuine issue in dispute as to whether Plaintiff defaulted, and if not, whether MSE terminated the Agreement in bad faith.  Plaintiff alleges that he contracted for the exclusive use of the Arena between 7:30 p.m. and 11:00 p.m. on July 30, 2011.  *See* Compl. ¶ 18; Pl.'s Opp'n at 7.  According to Plaintiff, Geisler terminated

the event at approximately 9:00 p.m., in violation of the
Agreement and without consent or authorization from Plaintiff.
Compl. ¶ 20.   Thus, Plaintiff is alleging more than simply a
claim that MSE exercised an explicit contractual right, but
rather that Geisler, on behalf of MSE, unreasonably terminated
the concert in bad faith.   *See Enomoto v. Space Adventures,
Ltd.*, 624 F. Supp. 2d 443, 450-51 (E.D. Va. 2009) (finding that
plaintiff properly pled claim for breach of the implied covenant
where plaintiff alleged more than just defendant's unfavorable
exercise of its contractual rights but also bad faith and unfair
dealing in the contractual relationship).

Defendants argue that MSE terminated the contract on its
explicit terms, relying on Paragraph 26 of the Agreement.   That
provision states:

> If before or during the term of the Agreement . . . (v)
> Licensee defaults in the performance or observance of any
> of its obligations . . ., then, in any such event, the
> Agreement shall, at MSE's option, expire as fully and
> completely as if such date and time of expiration were the
> date and time definitely fixed in the Agreement for the
> expiration of the Period, and Licensee shall then quit and
> surrender its rights to the Premises to MSE . . . .

Defs.' MSJ, Ex. A, at ¶ 26(a).   Based upon the clear terms of
that provision, MSE only had a contractual right to terminate
the concert in the event of Plaintiff's default.   However,
whether default occurred is a disputed issue of material fact.
Plaintiff thus alleges claims that fall outside of the rights

13

explicitly provided by the Agreement.  Accordingly, at this early stage of the litigation, summary judgment is inappropriate as to Count II against MSE.

**D.  Negligent and Intentional Misrepresentation Claims against All Defendants (Counts III and IV)**

Defendants argue that because Plaintiff fails to allege a violation of any common law duty, his negligent and intentional misrepresentation claims must fail.  *See* Defs.' MSJ at 10-13. According to Defendants, the duties alleged by Plaintiff exist solely by virtue of the Agreement, and therefore these claims are not proper bases for a cause of action in tort.  *Id.* Plaintiff contends that his negligent and intentional misrepresentation claims arose from Defendants' fraudulent inducement of Plaintiff into the contract.  Pl.'s Opp'n at 7-8. Plaintiff alleges that because this conduct is separate from the subsequent breach of contract, he can maintain claims for both breach of contract and fraud under Virginia law.  *See id.*

"[A] party can, in certain circumstances, show both a breach of contract and a tortious breach of duty. . . . However, 'the duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract.'"  *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) (quoting *Foreign Mission Bd. v. Wade*, 409 S.E.2d 144, 148 (Va. 1991)); *see also Station*

*# 2, LLC v. Lynch*, 695 S.E.2d 537, 540 (Va. 2010). As Plaintiff notes, "Virginia law recognizes the separate tort of fraud, even where the parties have agreed to a contract." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (citation omitted). In *Station # 2*, the Virginia Supreme Court recently addressed when an intention not to perform a contract can serve as a basis for a fraud claim. "In general, 'if a defendant makes a promise that, when made, he has no intention of performing, that promise is considered a misrepresentation of present fact and may form the basis for a claim of [] fraud.'" *Station # 2*, 695 S.E.2d at 540 (quoting *SuperValu, Inc. v. Johnson*, 666 S.E.2d 335, 342 (Va. 2008)). Virginia law "distinguishes between a statement that is false when made and a promise that becomes false only when the promisor later fails to keep his word. The former is fraud, the latter is breach of contract." *Lissmann v. Hartford Fire Ins. Co.*, 848 F.2d 50, 53 (4th Cir. 1988).

In *Richmond Metropolitan Authority*, the Virginia Supreme Court indicated that, "[i]n determining whether a cause of action sounds in contract or in tort, the source of the duty violated must be ascertained." 507 S.E.2d at 347. Here, Plaintiff alleges that "Defendants owed a duty of care to Plaintiff. This duty required the transmittal of accurate information from Defendants to Plaintiff and the disclosure of

15

material facts." Compl. ¶ 30.  However, as Plaintiff's

Complaint makes clear, the sole source of this duty was the

Agreement.  Plaintiff states: "Defendants represented to

Plaintiff that [he] would have exclusive use of the Patriot

Center for the[] concert, without any interruption from 7:30

P.M. until 11:00 P.M. on July 30, 2011." Compl. ¶ 29; *see also*

*id.* at ¶ 37.  Plaintiff's negligent and intentional

misrepresentation claims are premised entirely on Defendants'

purported failure to provide Plaintiff exclusive use of the

Arena during the times specified.  For example, in Plaintiff's

negligent misrepresentation claim, he alleges that Defendants

knew they would not permit Plaintiff to hold the event, and they

negligently made false statements and misrepresentations that

the event would be held on July 30, 2011 from 7:30 p.m. until

11:00 p.m.  *See* Compl. ¶¶ 31-32.  With respect to his claim for

intentional misrepresentation, Plaintiff alleges that

"Defendants misrepresented that they were granting Plaintiff an

exclusive licensing right to use the Patriot Center for [his]

event," but that "Defendants knew and/or should have known that

the representation was false at the time it was made."  Compl.

¶¶ 37-38.  These claims relate only to duties and obligations

required by the Agreement, not any duties arising out of the

common law.  Whether or not MSE breached those duties, such

actions do not give rise to a cause of action for negligent or

intentional misrepresentation "because no duty apart from contract to do what is complained of exists." *Richmond Metro. Auth.*, 507 S.E.2d at 347 (citation omitted).  Without the Agreement, Defendants owed no duty to Plaintiff to permit him to use the Arena or to transmit accurate information and disclose material facts to him.  Therefore, under Virginia law, Plaintiff cannot maintain a claim in tort, but only in contract.

Moreover, Plaintiff offers nothing more than a conclusory allegation that at the time he contracted with MSE for use of the Arena, MSE had no intention of performing its duties under the Agreement.  Indeed, this allegation is belied by the record, and in particular by Plaintiff's Affidavit.  The evidence provided by both parties demonstrates that MSE's agents and Plaintiff exchanged numerous emails in preparation for the event.  *See* Defs.' MSJ, Ex. B; Pl.'s Opp'n, Ex. D.  Plaintiff alleges that Geisler's suggestion on July 26, 2011 that Plaintiff cancel the event is "indicative of a predisposition by Defendant not to abide by the terms of the contract."  Compl. ¶ 31.  This statement, made months after the formation of the contract, is insufficient to plausibly suggest that at the time the contract was made, Defendants had no intention of performing it.[3]  Without any assertion that MSE's promise to use the Arena

---

[3] Moreover, Plaintiff's own Affidavit states that after July 26, 2011, Geisler and Defendants' agents made the Arena

was false when made, Plaintiff cannot bring a separate claim in tort for actions that form a claim for breach of contract.

For these reasons, the Court finds that summary judgment is appropriate as to Claims III and IV against all Defendants.

### E.    Punitive Damages against All Defendants

Finally, Defendants argue that the allegations in the Complaint do not support the requisite basis for a punitive damages claim.  According to Defendants, absent proof of an independent, willful tort beyond merely breaching a duty imposed by contract, punitive damages are not allowed in breach of contract cases.  Defs.' MSJ at 13-14.  Plaintiff argues that he has alleged an independent, willful tort of intentional misrepresentation, and therefore that he can maintain a claim for punitive damages.  Pl.'s Opp'n at 8-9.  Plaintiff further asserts that Geisler's name-calling and insults are sufficient factual allegations of malice in fact.  *See id.*

Virginia law allows an award of punitive damages in contract cases only under very limited circumstances, when there

---

available to Plaintiff.  In particular, Plaintiff affirms that MSE provided him access to the Arena between 2:30 p.m. and 4:00 p.m. on July 30, 2011 for a sound check.  *See* Fawehinmi Aff. ¶ 21.  Plaintiff additionally alleges that MSE opened the doors to the Arena at 7:30 p.m. on July 30, 2011, as provided in the Agreement.  *See* Compl. ¶ 19; Fawehinmi Aff. ¶ 22.  According to Plaintiff, it was only at about 9:00 p.m. that Geisler improperly terminated the concert.  Fawehinmi Aff. ¶ 23.  These additional facts contradict Plaintiff's argument that Defendants had no intention of performing the Agreement when it was made.

is proof of an "independent, willful tort, beyond the mere breach of a duty imposed by contract." *Kamlar Corp. v. Haley*, 299 S.E.2d 514, 518 (Va. 1983) (citing *Goodstein v. Weinberg*, 245 S.E.2d 140, 143 (Va. 1978); *Wright v. Everett*, 90 S.E.2d 855, 860 (Va. 1956)).  This serves as a narrow exception to the general rule in Virginia that punitive damages are not allowed in breach of contract cases and damages are limited to the pecuniary loss sustained.  *See Kamlar*, 299 S.E.2d at 517; *see also A & E Supply Co. v. Nationwide Mut. Fire Ins. Co.*, 798 F.2d 669, 671-72 (4th Cir. 1986).  A claim for punitive damages must demonstrate that the defendant's misconduct was willful and wanton, involving "some type of egregious conduct . . . going beyond that which shocks fair-minded people." *Harris v. Harman*, 486 S.E.2d 99, 102 (Va. 1997); *see also Woods v. Mendez*, 574 S.E.2d 263, 268 (Va. 2003); *Giant of Va., Inc. v. Pigg*, 152 S.E.2d 271, 277 (Va. 1967) ("Punitive or exemplary damages are allowable only where there is misconduct or actual malice, or such recklessness or negligence as to evince a conscious disregard of the rights of others.").

Because the Court has determined that summary judgment is appropriate as to Plaintiff's intentional and negligent misrepresentation claims, Plaintiff has failed to allege a separate, willful tort that would support a claim for punitive damages.  Moreover, Plaintiff has not pointed to any authority

that supports his argument that Geisler's insults, combined with his termination of the concert at 9:00 p.m., constituted egregious conduct or malice in fact.   Accordingly, the Court finds that summary judgment is appropriate with respect to the claim for punitive damages.

**IV.   CONCLUSION**

For the foregoing reasons, the Court hereby **GRANTS IN PART AND DENIES IN PART** Defendants' Motion for Partial Summary Judgment.   In addition, the Court **DENIES AS MOOT** Plaintiff's request for discovery under Rule 56(d).   An appropriate Order accompanies this Memorandum Opinion.


SIGNED:     **Emmet G. Sullivan**
            **United States District Judge**
            **September 29, 2012**